**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 09-4173**

_____

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

TRAVIS DELL JONES,

              Defendant - Appellant.

_____

Appeal from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, Chief District Judge.  (1:08-cr-00040-JPJ-1)

_____

Submitted:  February 2, 2010      Decided:  February 26, 2010

_____

Before MICHAEL, SHEDD, and DUNCAN, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

Paul G. Beers, GLENN, FELDMANN, DARBY & GOODLATTE, Roanoke, Virginia, for Appellant.  Julia C. Dudley, United States Attorney, Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Travis Dell Jones was convicted after a jury trial of conspiracy to possess with intent to distribute and distribute cocaine base, in violation of 21 U.S.C. § 846 (2006). The district court sentenced Jones to 156 months of imprisonment and Jones now appeals. Finding no error, we affirm.

Jones first argues that the district court erred in dismissing the first indictment without prejudice, rather than with prejudice, after federal authorities violated the anti-shuttling provision of the Interstate Agreement on Detainers ("IAD"), 18 U.S.C. app. 2 (2006). When a district court has dismissed an indictment for violation of the IAD, an appellate court reviews the district court's legal conclusions de novo, factual findings for clear error, and the ultimate decision for abuse of discretion. United States v. Kelley, 402 F.3d 39, 41 (1st Cir. 2005).

The IAD "is a compact entered into by [forty-eight] States, the United States, and the District of Columbia to establish procedures for resolution of one State's outstanding charges against a prisoner of another State." New York v. Hill, 528 U.S. 110, 111 (2000) (citation omitted); see 18 U.S.C. app. 2, § 2. Moreover, because the IAD is "a congressionally sanctioned interstate compact within the Compact Clause of the United States Constitution, art. I, § 10, cl. 3, the IAD is a

federal law subject to federal construction." Hill, 528 U.S. at 111 (internal quotation marks and citations omitted). Pursuant to § 7, when the United States entered into the agreement, it reserved the right to alter, amend, or repeal the act by which the IAD was enacted as federal law. 18 U.S.C. app. 2, § 7.

Under the anti-shuttling provision of the Interstate Agreement on Detainers ("IAD"), a receiving state is not to return a prisoner to the custody of the sending state until the charges lodged by the receiving state have been fully resolved. See 18 U.S.C. app. 2, § 2. Except as described below, the compact further provides that if the charges are not disposed of before a prisoner is returned to the sending state, the court must dismiss the indictment with prejudice. Id. However, after entering into the IAD on behalf of the United States and the District of Columbia, Congress amended the agreement, as authorized by § 7, by adding § 9, which allows a district court to dismiss an indictment with or without prejudice when the United States is the receiving state. 18 U.S.C. app. 2, § 9. Here, there is no dispute that the Government violated the anti-shuttling provision of the IAD when it returned Jones to state custody prior to his trial on this charge.

Jones argues that §§ 7 and 9 of the federal version of the IAD are unconstitutional because Congress has no authority to amend or repeal an interstate compact after it has consented

3

to the compact's creation.  We have previously held in Bush v. Muncy, 659 F.2d 402, 411-12 & n.5 (4th Cir. 1981), however, that while the United States is a party to the agreement, it is not a "party" to the constitutional compact.  Therefore, while the states that are parties to the constitutional compact may not fundamentally alter or amend the compact through state legislation by reason of the Supremacy Clause, there is no such restriction on the United States.  See Bush, 659 F.3d at 411-12 and n.5 (as constitutional compact is federal law, states may not amend compact because of Supremacy Clause); U.S. Const. art. VI ("This Constitution, and the laws of the United States which shall be made in pursuance thereof; . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.").  We conclude, therefore, that the district court's determination that §§ 7 and 9 of the federal version of the IAD are constitutional was not error.

Jones next argues that the district court nonetheless should have dismissed the first indictment with prejudice.  We have reviewed the record, however, and conclude that the district court properly and thoroughly weighed the relevant considerations and did not abuse its discretion in dismissing the first indictment without prejudice.

Jones also challenges the district court's denial of his motion to dismiss the second indictment for lack of jurisdiction because Jones had filed a notice of appeal of the dismissal of the first indictment. However, while the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal[,]" Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) (citation omitted), the district court does not lose jurisdiction when the litigant takes an appeal from an unappealable order. Id. (citing Ruby v. Sec'y of United States Navy, 365 F.2d 385, 389 (9th Cir. 1996) (en banc)). The district court's dismissal of the first indictment without prejudice was not a final order, nor a collateral order that could be immediately appealed by a defendant, and this court ultimately dismissed Jones' appeal for lack of jurisdiction. Therefore, the filing of the notice of appeal did not divest the district court of jurisdiction over this case.

Jones next challenges the district court's denial of his motion to suppress statements he made to state and federal authorities during a meeting set up by his counsel while he was in jail awaiting trial on state charges. "In reviewing a district court's ruling on a motion to suppress, [this court] review[s] the court's factual findings for clear error, and its

5

legal conclusions de novo." United States v. Cain, 524 F.3d 477, 481 (4th Cir. 2008) (citation omitted). When the district court denies a defendant's suppression motion, we construe "the evidence in the light most favorable to the [G]overnment." United States v. Grossman, 400 F.3d 212, 216 (4th Cir. 2005) (citation omitted).

Jones argues that the statements were inadmissible because he was not informed of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), before being questioned by law enforcement officials. Statements obtained from a defendant during custodial interrogation are presumptively compelled in violation of the Fifth Amendment, unless the government shows that law enforcement officers adequately informed the defendant of his Miranda rights and obtained a wavier of those rights. United States v. Cardwell, 433 F.3d 378, 388-89 (4th Cir. 2005). To determine whether a defendant was in custody for purposes of Miranda where the defendant is already incarcerated, the court must determine whether there is "an added imposition on his freedom of movement." United States v. Conley, 779 F.2d 970, 973 (4th Cir. 1995) (citing Cervantes v. Walker, 589 F.2d 424, 428 (9th Cir. 1978)). In doing so, the district court must consider "whether the inmate was subjected to more than the usual restraint on a prisoner's liberty to depart." Conley, 779 F.2d at 973.

6

In determining whether an inmate was in custody during an interrogation, the district court should look to "the language used to summon the individual, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the additional pressure exerted on him . . . ." Cervantes, 589 F.2d at 428. Having thoroughly reviewed the record and the relevant legal authorities, we conclude that the district court did not err in finding that Jones was not in custody for purposes of Miranda when he made the incriminating statements.

Jones also argues that his statements were inadmissible because they were involuntary. To be admissible, a defendant's statements to law enforcement must be voluntary under the Fifth Amendment. United States v. Braxton, 112 F.3d 777, 780 (4th Cir. 1997). The test to determine the voluntariness of a confession "is whether the confession was extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." Id. (internal quotation marks and citations omitted). Moreover, "'coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." Id. (citing Colorado v. Connelly, 479 U.S. 157 (1986)). To determine whether police activity was coercive, the

7

court must ask "whether the defendant's will has been overborne or his capacity for self-determination critically impaired." Id. (internal quotation marks and citation omitted). This determination requires a consideration of "the totality of the circumstances, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." Id. (internal quotation marks and citations omitted).

We review a district court's determination regarding voluntariness de novo but accept the district court's findings on the circumstances surrounding a confession absent clear error. Id. at 781. Here, we have thoroughly reviewed the record and conclude that there is no evidence of coercive police activity demonstrating that Jones' will was overcome. Critically, Jones and his counsel actually initiated the meeting at which the statements were made, Jones' counsel was present, the interview took place in the prison library, Jones was not in restraints, and the questioning lasted no longer than thirty minutes. Accordingly, we find that Jones' statements were voluntary and admissible.

Jones next argues that there was insufficient evidence to demonstrate that he was a member of the conspiracy. We review a district court's decision to deny a Fed. R. Crim. P. 29 motion for a judgment of acquittal de novo and the denial of a

Fed. R. Crim. P. 33 motion for a new trial for abuse of discretion. United States v. Smith, 451 F.3d 209, 216 (4th Cir. 2006). A defendant challenging the sufficiency of the evidence faces a heavy burden. United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997). The verdict of a jury must be sustained "if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by 'substantial evidence.'" Smith, 451 F.3d at 216 (citations omitted). Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id. (internal quotation marks and citation omitted). Furthermore, "[t]he jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented." Beidler, 110 F.3d at 1067 (internal quotation marks and citation omitted). "Reversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." Id. (internal quotation marks and citation omitted).

In order to prove conspiracy to distribute and possess with intent to distribute crack cocaine, the Government was required to establish that: "(1) an agreement to [distribute and] possess cocaine [base] with intent to distribute existed between two or more persons, (2) the defendant knew of the

9

conspiracy, and (3) the defendant knowingly and voluntarily became a part of the conspiracy." United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc) (citations omitted). The Government may meet its burden of proof "wholly by circumstantial evidence." Id. at 858. We have reviewed the evidence in this case and conclude that the Government produced sufficient evidence from which a reasonable jury could find that Jones was a member of the conspiracy.

Finally, Jones challenges the district court's denial of his proposed jury instruction on a buyer-seller relationship. "'The decision to give or not to give a jury instruction is reviewed for an abuse of discretion.'" United States v. Hurwitz, 459 F.3d 463, 474 (4th Cir. 2006) (quoting United States v. Moye, 454 F.3d 390, 398 (4th Cir. 2006) (en banc)). Furthermore, "'[w]e review a jury instruction to determine whether, taken as a whole, the instruction fairly states the controlling law.'" Id. (quoting Moye, 454 F.3d at 398). If this court determines that the district court erred in refusing an instruction, such error "warrant[s] reversal of the conviction only if the error is prejudicial based on a review of the record as a whole." Moye, 454 F.3d at 399 (internal quotation marks and citation omitted).

Jones requested the court instruct the jury that evidence of a buyer-seller relationship alone is insufficient to

support a conspiracy conviction, even if the purchases were made with the intent to resell the narcotics. Having reviewed the relevant legal authorities, we conclude that the district court did not err in refusing to give this instruction. Further, based on the record as a whole, even if we assume the instruction should have been given, Jones has failed to demonstrate he suffered prejudice as a result.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED